FITZJOHN COACH COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 27455, 31722.    Filed April 30, 1956.

*Lloyd W. Kennedy, Esq.*, and *David W. Richmond, Esq.*, for the petitioner.

*David H. Nelson, Esq.*, for the respondent.

OPINION.

BLACK, *Judge:* Petitioner's claim for relief is based primarily on the ground that the character of its business was changed during the base period, within the meaning of section 722 (b) (4), from that of a builder of composite wood bus bodies to that of a builder of integral all-metal buses, and that its average base period net income does not reflect the normal operation of the business, as changed. Petitioner also claims that the business did not reach by the end of the base period the earning level that it would have reached had the change in the character of its business been made 2 years earlier, and petitioner is therefore entitled to reconstruct its normal average base period net income by assuming that the change in the character of its business had been made 2 years earlier.

Petitioner has also claimed that it is entitled to relief under section 722 (b) (1) because during the last year of its base period, from June 8 through October 19, 1940, petitioner's normal operation was completely disrupted by a strike at its plant. However, no relief is prayed for separately on this ground because the strike occurred after December 31, 1939, and petitioner therefore says such relief depends on the constructive level of normal base period earnings granted petitioner on its claim under section 722 (b) (4).

Respondent allowed petitioner's claims for relief in part and determined its constructive average base period net income for the taxable years at issue as follows:

| Year ending November 30 | Constructive average base period net income |
|---|---|
| 1941 | $33,143.42 |
| 1942–1946 | 43,870.46 |

Such determination resulted in a partial reduction of petitioner's excess profits tax for the taxable years 1941, 1942, and 1943, but in no reduction for the taxable years 1944, 1945, and 1946 due to the 80 per cent limitation imposed by section 710 (a) (1) (B) of the 1939 Code.

Petitioner's average base period net income, computed without the benefit of section 722, is $18,277.22 for 1941 and $26,192.29 for the other taxable years. Petitioner contends here that it is entitled to a constructive average base period net income of $123,137.

While the respondent concedes that there was a base period "change in the operations" of petitioner's business by reason of its introduction of the integral-type buses, he denies that there was any difference in petitioner's products. He argues this point at considerable length in his brief. This argument seems to us without merit. Relief under subsection (b) (4) is predicated upon a base period change "in the character of the business"; and such a change is defined as including "a change in the operation or management of the business" or "a difference in the products." Whether the change in the character of petitioner's business came about by a change in operation, or a difference in products, or both, our task of determining a fair and just amount representing petitioner's normal base period earnings under the changed conditions remains the same.

We might observe at this point that although it has been stipulated that petitioner's base period began January 7, 1936, and extended to November 30, 1940, in reconstructing normal base period earnings no consideration can be given to events taking place after December 31, 1939. See *Wisconsin Farmer Co.*, 14 T. C. 1021. The changes to consider here all took place prior to January 1, 1940.

The evidence before us leaves little doubt that petitioner was losing business and losing its competitive position in the bus market during much of its base period because of its failure to follow the industry-wide transition to the integral transit-type bus. It decided to make the changeover in 1937 and sold its first integral-type bus of its own manufacture in April 1938. This change from the manufacture of bus bodies to the manufacture of complete integral-type buses was a substantial change and it affected all departments of petitioner's business. It is true that petitioner continued to build bus bodies but in addition it had to go out in the market and purchase the motors, axles, wheels, and other parts for the assembled chassis on which the bodies were to be built. In the sales end of the business, petitioner had to establish a market for its integral-type buses. Its sales com-

missions and selling expenses more than doubled over the period 1936–1939. These changes necessarily took time and required a considerable development period.

Petitioner's net sales fell off from $583,739 in 1936 to $491,598 in 1937, and $393,255 in 1938. It had a net profit of $71,942 in 1936, net losses of $12,112 in 1937 and $7,632 in 1938. There was a recovery in 1939 with net sales of $781,539 and a net profit of $48,103. There is no reason to doubt, on the evidence before us, that this upward trend would have continued in 1940 but for the strike which closed petitioner's plant from June 8 to October 22 of that year. As a result of the strike, petitioner's 1940 net sales fell back to $511,924 and it had a loss of $4,330. The upward trend was resumed in 1941.

Respondent takes the position that petitioner reached its normal level of earnings under the changed operations by the end of its fiscal year 1939. He has computed petitioner's constructive average base period net income by backcasting petitioner's actual earnings of $48,103 for its fiscal year 1939 on a 91.2 general business index. Petitioner does not question the use of the general business index for backcasting but it does contend that the Commissioner erred in his use of $48,103 for backcasting. It is petitioner's contention that when the 2-year push-back rule is applied its constructive net income for its fiscal year 1940 is $135,018 and that when this is backcast by 0.912, its constructive average base period net income is $123,137. This latter figure is the constructive average base period net income which petitioner contends should be used in computing the measure of its relief under section 722, instead of the $43,870.46 which the Commissioner has used.

Petitioner did not sell its first integral, transit-type bus until April 1938. Its total for that year was 37 buses and its total dollar sales were $393,255. In 1939, 103 integral buses were sold, and total dollar sales amounted to $781,539. In the table shown in our Findings of Fact, petitioner's sales of bodies were decreasing and the sales of integral buses were increasing.

We have found as a fact that by the end of petitioner's base period petitioner had not reached the level of earnings it would have reached if the change in its business, that is, the change from manufacturing bodies to manufacturing integral buses, had occurred 2 years earlier than it did. At the end of 1939, petitioner had had an experience of 1 year and about 7 months in manufacturing and marketing integral buses. It sold 37 buses in 1938 and 103 in 1939. Of the 1939 sales, 80 were in the last 6 months of that fiscal year. This indicates a continuing growth of the business throughout 1939. This growth might have been completed and a normal level of earnings reached in the last base period year, 1940, but for the strike

which closed petitioner's plant from June 8 to October 22 in that year. The effect of the strike carried over into the year 1941. With 2 years' additional experience under the base period changes, we think that petitioner would in all probability have reached a normal level of earnings both in the manufacture and sale of integral buses and in the sale of parts in the fiscal year 1939. Absent the strike, this level would have been maintained or perhaps exceeded in 1940.

Petitioner established a separate department for supplying replacement parts to its customers as a necessary adjunct of the business of manufacturing integral buses. This developed into a profitable branch of the business. The evidence is that ordinarily the need for substantial replacement parts for a bus begins after about 18 months or 2 years of use and continues for the life of the bus. The sales in the parts and service department increased from $9,874 in 1939, which was about the 1936–1939 average, to approximately $23,000 in 1940. At the end of 1939, there were 16 of petitioner's buses that had been in service as long as 18 months but none for as much as 2 years.

With petitioner's 2 years' additional experience in manufacturing and selling integral buses, based on the conditions existing at the close of the year 1939 and on the outlook for petitioner's business at that time, and making what we consider proper adjustments for increased sales of buses and replacement parts, we think that a fair and just amount representing constructive average base period earnings is $72,500. This amount is subject to the statutory adjustment for taxes in computing the constructive average base period net income for the fiscal year ended November 30, 1941.

Reviewed by the Special Division.

*Decisions will be entered under Rule 50.*